**PANHANDLE EASTERN PIPE LINE CO. et al. v. FEDERAL POWER COMMISSION et al.**

No. 12466.

United States Court of Appeals Eighth Circuit.

Nov. 22, 1950.

See also, 179 F.2d 896.

23 S.Ct. 698, 47 L.Ed. 1074; T. W. A. v. Farley, Postmaster General, 2 Cir., 71 F.2d 288.

6. Authorities note 1, supra.

Frank C. Sterck, Washington, D. C. for petitioner Remington Rand Inc.

Samuel H. Riggs, Detroit, Mich. for Panhandle Eastern Pipe Line Co.

Before SANBORN, WOODROUGH, and RIDDICK, Circuit Judges.

SANBORN, Circuit Judge.

The petition of Remington Rand Inc. asks that it be reimbursed for certain taxes it was required to pay while performing services in Michigan and Indiana in connection with the distribution of the fund impounded in this case to ultimate consumers of gas.

The services were rendered under contracts with the Administrators of the plans of distribution in those states, who were appointed by this Court. Each of the contracts contained the following provision:

"Taxes: If the services covered * * * or the materials furnished hereinunder are subject to any Federal, State or local taxes now in existence, or hereafter enacted, the amount of such tax shall at the time of billing be added to the prices quoted herein and shall be paid by the Administrator. This paragraph shall not be deemed to refer to Social Security, Workmen's Compensation, Unemployment Insurance or other such taxes assessed against Remington Rand and relating to its own employees."

The petitioner states that in performing the contracts it used tabulating machinery and equipment of its own manufacture and was required to pay federal Manufacturers' Excise Taxes in an amount equal to 10% of the rental or sales price on all of the equipment so used; that for Michigan these taxes amounted to $5,464.51, and for Indiana they amounted to $2,145.84, and that it paid to the State of Michigan as use taxes $1,817.16, as required by law; and that petitioner failed to include these tax payments in its bills presented to the Administrators, although it was entitled to reimbursement for the amounts paid.

Panhandle Eastern Pipe Line Company, which, under the order creating the impounded fund, was required to pay the expenses of distribution of the fund, has filed a response to the petition, asserting that the petitioner, under its contracts, was obligated to furnish all items of machinery and equipment mentioned in its petition without cost to the Administrators and without right to reimbursement by Panhandle, and that if this Court should determine that petitioner should be reimbursed for such taxes the reimbursement should be ordered out of the undistributed balance of the fund in the custody of the Court.

The Federal Power Commission, in a response to the petition, asserts, in substance, that the contracts under which the petitioner performed its services did not provide for the reimbursement of the taxes in question, and that, if reimbursement is to be ordered, Panhandle should be required to make it.

This Court heard oral argument upon the petition and the responses thereto. With permission of the Court, Panhandle filed a supplemental memorandum in response to the oral argument of petitioner, in order to dispel any inference that at the time the contracts were executed the Administrators understood that the tax clauses of the contracts were intended to cover taxes such as those for which reimbursement was requested, or that the Administrators were discharged before they received from the petitioner claims for reimbursement of the taxes paid by it. Attached to the supplemental memorandum are affidavits of Mr. Lemuel L. Laing, the Michigan Adminis-

trator, and Mr. Earl L. Carter, the Indiana Administrator.

Mr. Laing in his affidavit states that, during the negotiations leading up to the contract with petitioner, its representatives did not at any time disclose to him that the federal Manufacturers' Excise Tax was payable by the Administrator under the tax clause of the contract; that it was his understanding that the unit prices quoted by the petitioner and included in the contract covered all taxes then known to be applicable to the machines and equipment petitioner was to furnish to perform its work; that he had no knowledge that the petitioner claimed otherwise until in April or May, 1949, when the matter was mentioned by a representative of petitioner; that thereafter a statement for the taxes, dated June 30, 1949, was presented to him by petitioner; that, in the Administrator's opinion, the matter of reimbursement for the taxes was questionable; that ultimately, at the suggestion of the Special Master, the petitioner was asked to present the matter of reimbursement to this Court; that the Administrator has never passed upon the accuracy of the statement for taxes allegedly paid by the petitioner, and has not approved its claim.

Mr. Carter states in his affidavit that, prior to the execution of the contract relative to the distribution in Indiana, he had a number of conferences with representatives of petitioner relative to the meaning of the terms and conditions of the proposed contract; that petitioner represented that the unit prices quoted would cover the entire cost to the Administrator of the services to be performed and the materials to be furnished under the contract, and that there would be no additional charges; that this was one of the principal reasons for awarding the contract to petitioner; that when he asked the meaning of the tax clause in the contract he was told that, since there was no Indiana sales tax to be charged on materials furnished, the tax clause would not apply to Indiana; that at no time prior to the execution of the contract was he informed that petitioner construed the tax clause to permit petitioner to

collect from him any amounts paid as federal Manufacturers' Excise Taxes upon machinery or equipment to be used by petitioner in performing the services covered by the contract; that, in his opinion, the petitioner was required to supply the necessary machinery and equipment without cost other than the unit prices provided for in the contract; that he was surprised when the petitioner attempted to collect the amount of these excise taxes in the spring of 1949, and refused to approve the payment.

■ It seems to us that, in so far as the claim of petitioner for reimbursement is based upon the payment of the federal excise taxes upon its machinery and equipment, the tax clause of the contracts referring to taxes on services and materials furnished did not, either expressly or by necessary implication, cover such taxes. There was nothing in the contracts, and apparently nothing in the negotiations leading up to their execution, which would charge the Administrators or Panhandle with notice that these taxes on petitioner's machinery or equipment were not reflected in the unit prices specified in the contract and were to be borne by Panhandle or the impounded fund. We think that the contracts created no legal obligation for the reimbursement of these taxes.

■ In the distribution of a trust fund such as that here involved, a court should authorize no expenditures which are not clearly justified. The state administrators were appointed by this Court to direct and supervise the distribution of the fund in their respective states in as thorough, speedy, efficient and economical a way as possible. It was their duty and responsibility to contract for the services of petitioner, to approve all proper bills submitted by it, and to refrain from approving any bills which were not authorized by the contracts.

Mr. Carter, as Administrator for Indiana, is of the opinion that the tax clause of the contract which he made with petitioner was not intended to and did not cover reimbursement of the petitioner for Manufacturers' Excise Taxes on its machinery and

equipment. Mr. Laing, as Administrator for Michigan, thinks that it is questionable whether the tax clause entitled the petitioner to reimbursement for such taxes. Each of these administrators has refused to approve the petitioner's claim.

It seems to us that, under the circumstances, this Court should not order Panhandle to reimburse the petitioner for the federal excise taxes or direct that reimbursement therefor be made out of the undistributed balance of the impounded fund. If it appeared that both parties to these contracts had intended that such taxes as these were to be borne by Panhandle or the fund, we would have no hesitation in directing reimbursement, regardless of the wording of the contracts, but that is not the situation.

We think, however, that the State Use Taxes collected by Michigan from the petitioner reasonably may be regarded as taxes attributable to its services under the Michigan contract, rather than taxes upon its machinery and equipment. We hesitate to impose the burden of these taxes upon Panhandle at this late date. It could hardly have anticipated that a claim such as that of petitioner would arise or be regarded as reimbursable. The State of Michigan, which imposed the tax, will, in all probability, eventually receive more than half a million dollars out of the undistributed portion of the impounded fund allocated to the State. We think it would not be unfair or improper to require reimbursement of petitioner for the Michigan Use Tax out of the Michigan portion of the fund which remains undistributed.

The Clerk of this Court is authorized and directed to pay to petitioner out of the undistributed portion of the impounded fund allocated to the State of Michigan the sum of $1,817.16 to reimburse petitioner for Use Taxes paid that State in connection with services rendered under the contract with Lemuel A. Laing, as Administrator. In all other respects the petition is denied. This order will become effective thirty days from this date unless a further stay is granted within that time.